IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:26-cv-00782-SKC

JOSE LUIS RUIZ DIAZ,

 Petitioner,

v.

KRISTI NOEM, *et al.*,

 Respondents.

---

**ORDER**

---

Petitioner Jose Luis Ruiz Diaz is a citizen of Mexico who entered the United States without inspection in 2001, and he has resided here continuously since then. Dkt. 9, ¶¶1-2. Mr. Ruiz Diaz is the father of two children who rely on him for financial and emotional support. *Id.* ¶6. He applied for asylum on November 17, 2025. *Id.* ¶5.

On January 4, 2026, while Mr. Ruiz Diaz was driving in the Hillsborough-Manatee-Pinellas County area in Florida, he made a U-turn and was stopped by a local police officer. *Id.* ¶7. Although the officer told Mr. Ruiz Diaz that he would be issued a warning for an expired driver's license, immigration officers arrived at the scene and took him into custody. *Id.* Thereafter, he was transferred to the Denver Detention Facility. *Id.* ¶9.

1

On March 4, 2026, Petitioner appeared for a bond redetermination hearing wherein the immigration judge found that Mr. Ruiz Diaz is not a danger to the community and any risk of flight was mitigated by his consistent employment history, his intent to file for cancellation of removal, and his strong ties to his family and community. *Id.* ¶10. The immigration judge ordered that he be released upon payment of a $40,000 bond and any other conditions of supervision deemed necessary. *Id.* However, the Department of Homeland Security (DHS) invoked an automatic stay regulation so it could appeal the IJ's conclusions. Dkt. 9-5.

The automatic stay regulation reads, in relevant part:

> **Automatic stay in certain cases.** In any case in which DHS has determined that [a noncitizen] should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board. The decision whether or not to file Form EOIR-43 is subject to the discretion of the Secretary.

8 C.F.R. § 1003.19(i)(2).[1] Mr. Ruiz Diaz remains in custody to this day under this

---

[1] The automatic stay lapses after 90 days, absent a Board of Immigration Appeals (BIA) decision, 8 C.F.R. § 1003.6(c)(4), but the government can extend the detention by seeking a discretionary stay from the BIA, which automatically extends the stay for an additional 30 days while the BIA decides the request for discretionary stay. 8 C.F.R. § 1003.6(c)(5). If the BIA authorizes a noncitizens release, denies a motion for discretionary stay, or fails to act on such a motion before the automatic stay period expires, the noncitizen's release shall be automatically stayed for five business days. 8 C.F.R. § 1003.6(d). During that period, DHS can choose to refer the bond decision to the Attorney General, which extends the automatic stay for another 15 business days. 8 C.F.R. § 1003.6(d). The Attorney General can then extend the stay for the

regulation. Dkt. 9, ¶¶11-12.

Petitioner filed the Amended Petition for Writ of Habeas Corpus on March 9, 2026, seeking an order from this Court directing Respondents to affect his immediate release upon the payment of his $40,000 bond with any reasonable conditions of supervision as authorized by the immigration judge. Dkt. 9. He contends, *inter alia*, Respondents' use of the automatic stay regulation, 8 C.F.R. § 1003.19(i)(2) is unconstitutional and violates his procedural due process rights. *Id.* ¶¶57-68. And he contends Respondents' attempt to detain him under 8 U.S.C. § 1225(b)(2) is unlawful. *Id.* at ¶¶69-72.

This Court ordered Respondents[2] to respond to the Amended Petition on or before March 13, 2026. Dkt. 10. Specifically, the Court asked Respondents to address Magistrate Judge Susan B. Prose's analysis in *Merchan-Pacheo v. Noem*, No. 1:25-cv-03860-SBP, 2026 WL 88526, at *1 (D. Colo. Jan. 12, 2026) and show cause why it should not adopt her analysis in this case. In *Merchan-Pacheco*, Judge Prose was confronted with facts like those here, where an immigration judge found that the petitioner merited release upon posting a $25,000 bond. Although the petitioner's family paid the bond, DHS then invoked the automatic stay provision in 8 C.F.R.

---

pendency of the custody proceedings. 8 C.F.R. § 1003.6(d).

[2] "Respondents" refers to the Warden of the Denver Contract Detention Facility; Kelei Walker, the ICE Field Office Director of Detention and Removal; Kristi Noem, the Secretary of the United States Department of Homeland Security; Todd Lyons, the Acting Director of ICE; and Pamela Bondi, the United States Attorney General.

§ 1003.19(i)(2) so it could appeal the immigration judge's findings to the BIA. Judge Prose conducted a thorough analysis under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and concluded that the automatic stay provision violated the petitioner's procedural due process rights.

In commendable candor to the Court, Respondents acknowledge that the facts in this case are not materially different from those in *Merchan-Pacheco* but argue that the case was wrongly decided. Dkt. 11, pp.12-14. Respondents contend the *Mathews v. Eldridge* analysis is not applicable in cases like this and even if it is, the factors do not support Mr. Ruiz Diaz's due process claims. *Id.* pp. 8-11. While thoughtfully articulated, the Court respectfully disagrees with Respondents and adopts in full Judge Prose's reasoning in *Merchan-Pach*eco and that of the growing number of district courts to address this issue.[3] *See Martinez v. Noem*, No. 5:25-CV-01007-JKP, 2025 WL 2598379, at *4, n.1 (W.D. Tex. Sept. 8, 2025) (collecting cases).[4]

## JURISDICTION

The Court has jurisdiction over this matter pursuant to Section 2241 of Title 28, which authorizes it to issue a writ of habeas corpus when a person is "in custody

---

[3] In her Order, Judge Prose addressed Respondents' contention that *Mathews v. Eldridge* does not apply in these cases. She engaged in a detailed analysis of each of Respondents' arguments and those cases upon which they relied and concluded *Mathews* is applicable. The Court agrees and adopts this analysis. *Merchan-Pacheco*, 2026 WL 88526, at **4-8.

[4] To be sure, the notion that this regulation likely violates the procedural due process rights of detainees is not new. Courts have been reaching this conclusion for over 20 years. *Martinez*, 2025 WL 2598379, at *4, n.1.

in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "[T]he traditional function of the writ is to secure release from illegal custody." *Id.* Noncitizens may properly challenge the lawfulness of their detention through habeas proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

The Court has considered the Amended Petition, the Response, the various attachments, and the governing law. Because Petitioner's challenge is fundamentally legal in nature, the Court declines to hold a hearing. *See* 28 U.S.C. § 2243.

## ANALYSIS

To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, (1976). Under *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

At the outset, there is no question that Mr. Ruiz Diaz has a significant interest at stake. Freedom from physical detention "is the most elemental of liberty interests."

*Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (directing courts, when assessing the first *Mathews* factor, to consider only the petitioner's interests at stake in ongoing detention without consideration of the respondents' justifications for the detention). Despite not being accused of any crime, Petitioner is being held in a detention facility that "strongly resemble[s] penal confinement," *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 940 (D. Colo. 2025), is away from his family, and is unable to maintain his employment. Thus, the first *Matthews* factor supports Mr. Ruiz Diaz's claim of a due process violation.

Turning to the second factor, Respondents, citing *City of Los Angeles v. David*, 538 U.S. 715, 718 (2003), argue that the automatic stay enhances accuracy. *Id*. p.10. But this frames the concern for accuracy solely in the government's favor, and "the traditional due process concern with accuracy . . . is meant to protect the individual interest." *Benham v. Ledbetter*, 785 F.2d 1480, 1487 (11th Cir. 1986); *see also Speiser v. Randall*, 357 U.S. 513, 525–26 (1958) ("Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of producing a sufficiency of proof in the first instance. . . ."); *Mathews v. Eldridge*, 424 U.S. 319, 344 (1976) ("[P]rocedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions."). In matters such as this, the concern for accuracy is that individuals will erroneously be deprived of their liberty—the paramount interest at stake—as

6

opposed to a concern with the accuracy of an IJ's determination that an individual is not a danger or a flight risk.[5]

And the Court does conclude that Respondents' use of the automatic stay creates a large risk that Mr. Ruiz Diaz will erroneously be deprived of his liberty interests. To be sure, "the only individuals subject to the automatic stay are those who, by definition, prevailed at their bond hearing." *Martinez*, 2025 WL 2598379, at *3. It creates "a patently unfair situation by taking the stay decision out of the hands of the judges altogether and giving it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified." *Ashley v. Ridge*, 288 F. Supp. 2d 662, 671 (D.N.J. 2003) (cleaned up).

Further, the automatic stay does not require DHS to consider or demonstrate any individualized facts or show a likelihood of success on the merits. "A stay of an order directing the release of a detained individual is an 'especially' extraordinary step, because 'in our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" *Gunaydin v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154, at *9 (D. Minn. May 21, 2025) (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

---

[5] To be sure, Respondents do not appeal those findings and have instead appealed the IJ's determination that 8 U.S.C. § 1226 applies to Petitioner in the first place. Dkt. 11, p.3. But this Court has already rejected Respondents' interpretation of 8 U.S.C. §§ 1225 and 1226 in *Aleman Hernandez v. Baltazar*, No. 1:25-cv-3688-SKC-SBP, 2025 WL 3718159, at *1 (D. Colo. Dec. 23, 2025). To the extent necessary, the Court incorporates its *Aleman Hernandez* analysis here.

Finally, with respect to the third factor, Respondents contend they have a strong governmental interest in preventing flight risks due to the difficulties of removing noncitizens who are not detained. Dkt. 9, pp.10-11. But this interest rings hollow given that, as noted above, this automatic stay is being applied only to those individuals "who an Immigration Judge has determined [*do*] *not pose a public safety threat or a risk of flight* sufficient to warrant continued confinement." *Merchan-Pacheo*, 2026 WL 88526, at \*16 (emphasis added). Respondents' stated interest is inconsequential when weighed against Mr. Ruiz Diaz's liberty interest. *Maza v. Hyde*, --- F. Supp.3d ---, 2025 WL 2951922, at \*4 (D. Mass. Oct. 20, 2025).

\*    \*    \*

For the reasons shared above, the Court finds that the automatic stay regulation, 8 C.F.R § 1003.19(i)(2), violates Mr. Ruiz Diaz's procedural due process rights under the Fifth Amendment. Accordingly, the Petition for Writ of Habeas Corpus is GRANTED[6] and the Court ORDERS as follows:

1. Once Mr. Ruiz Diaz posts his $40,000 bond, Respondents shall immediately release Petitioner from detention with any reasonable conditions of supervision as authorized by the immigration judge.

2. Mr. Ruiz Diaz shall remain in Respondents' temporary custody for the sole

---

[6] To the extent Petitioner's Counsel seeks an award of attorney's fees, they must file a separate motion for fees that complies with the Federal Rules of Civil Procedure and the Local Rules of Practice for this District.

purpose of Respondents effectuating his return to Orlando, Florida.

3. Respondents **SHALL** transport Mr. Ruiz Diaz back to Orlando, Florida, **at their own expense**, within **36 hours** of the date and time of this Order.

4. To effectuate the purpose of this Court's Order and allow Mr. Ruiz Diaz to return home, Respondents are also temporarily enjoined from detaining Mr. Ruiz Diaz pursuant to 8 U.S.C. § 1226 for a period of fourteen days.

5. On or before Friday, March 20, 2026, Respondents shall confirm in writing Petitioner's release from custody and his return to Florida.

6. This Court retains jurisdiction over this matter to ensure Respondents comply with this Order.

DATED:    March 16, 2026, 3:04 PM

BY THE COURT

S. Kato Crews
United States District Judge

9